UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH V. KAPUSTA,

                                    NO. CIV. S-03-1232 LKK

          Plaintiff,

     v.                                    O R D E R

GALE CORPORATION,

          Defendant.
_____/

     This case is on remand from the Federal Circuit, which
vacated this court's previous Claim Construction Order.  Pending
before the court now are plaintiff's three motions for summary
judgment and defendant's motion for summary judgment.  First,
plaintiff argues that it is entitled to summary judgment on the
issue of infringement.  Second, plaintiff contends that
defendant should be precluded from arguing that plaintiff's
patent is invalid because defendant will be unable to establish
the level of ordinary skill in the art.  Third, plaintiff argues
that its patent cannot be invalidated on grounds of

anticipation, because none of defendant's prior art references disclose each and every limitation of plaintiff's patent.  Last, defendant claims that plaintiff's patent is invalid because he abandoned the application and that the patent is unenforceable because of inequitable conduct.

For the reasons set forth below, the motion for infringement is granted; the motion for no invalidity under § 103(a) is denied; the motion for no invalidity under § 102(b) is granted in part and denied in part; and the motion for summary judgment of patent invalidity and unenforceability is denied.

## I. Facts

Plaintiff Joseph Kapusta has brought an action for patent infringement against defendant Gale Corporation.  At issue are Kapusta's patent, U.S. Patent 6,043,663 (the "'663 patent"), and Gale's Pocket Toners 1, 2, and 6 (collectively, the "accused products").  The patented invention relates to devices that detect malfunctions in coaxial cables.  The court previously issued a Claim Construction Order on August 4, 2004 construing the '663 patent and, specifically, the meaning of the phrase "hand-grip size case."  The Federal Circuit vacated that order on November 15, 2005, and the matter is now before the court on remand.  <u>Kapusta v. Gale Corp.</u>, No. 05-1091, slip op. at 10 (Fed. Cir. Nov. 15, 2005).

## A. Infringement

Kapusta first moves for summary judgment with respect to infringement.  The threshold and ultimately determinative issue

1   with regard to this motion concerns the parties' Stipulation for

2   Entry of Final Judgment of November 2, 2004, as that document

3   dictates what facts remain in dispute.   The parties submitted

4   their stipulation after this court issued its Claim Construction

5   Order construing the term "hand-grip size case."   Paragraph six

6   of the stipulation states that "[t]he parties agree that each

7   claim element specified in claims 1, 2 and 3 of the '663 patent,

8   other than the term 'hand grip size case' described in paragraph

9   5 above, are present in the Gale Pocket Toner products."   Pl.'s

10  Statement of Undisputed Fact ("SUF") 3.   Gale does not dispute

11  this statement to the extent that it was qualified and

12  contingent upon this court's Claim Construction Order.   However,

13  it contends that the stipulation was voided once the Federal

14  Circuit vacated that order.

15      There is no dispute that at least certain stipulations were

16  made expressly contingent upon the non-reversal of this court's

17  claim construction.   For example, paragraph five of the

18  stipulation states that:

19          The parties stipulate if the claims of the '663 patent
            are interpreted as specified in the claim construction
20          order dated August 5, 2004, then the Gale Pocket Toner
            products . . . do not infringe claims 1-3 of the '663
21          patent, because they do not fall within the scope of
            the Court's interpretation of the term "hand grip size
22          case."

23  Likewise, paragraph seven states:

24          Because the parties hereby stipulate to judgment of
            non-infringement based on the Court's claim
25          construction ruling, the remaining claims and issues
            in Kapusta summary judgment motion and in this action
26          are moot and can be dismissed.   If the United States

                                    3

> Court of Appeals for the Federal Circuit reverses the Court's claim construction, then Gale may proceed with its defense of invalidity and unenforceability on remand.

Gale takes the position that paragraph six, like paragraphs five and seven, was also conditioned upon the continued operation of this court's Claim Construction Order.  Because the Federal Circuit vacated that order on November 15, 2005, the court must now determine the nature of the stipulation.

**B. Expert Reports**

The second major issue before the court pertains to expert reports.  Kapusta contends that Gale will be unable to provide expert testimony regarding a critical element in its defense that the patent is invalid.  This court's Status (Pretrial Scheduling) Conference order from March 20, 2006 instructed that "the written report specified in Fed. R. Civ. P. 26A2B shall be filed not later than thirty (30) days [after the deadline for expert designation]."  Order at 2.  Thus, in this case, expert reports were due no later than May 19, 2006.  Pl.'s SUF 2. However, an expert witness for defendant, Mr. Robert Gale, failed to provide plaintiff with an expert report.  Pl.'s SUF 3. The parties disagree as to whether Mr. Gale was required to submit such a report under Rule 26.

Moreover, the parties dispute whether Mr. Gale was the only technical expert identified by defendant to testify.  Def.'s SUF 1.  Defendant notes that it previously identified Mark Scheitrum as one of its technical experts and mailed Mr. Scheitrum's

expert report to plaintiff on April 23, 2004.  Finnerty Decl. in
Support of Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Finnerty
Decl."), Exhs. A, B.  Mr. Scheitrum's report stated: "The
electrical knowledge and skill required . . . was known to the
vast majority of electrical engineers and technicians for many
years prior to the filing of the Kapusta Patent."  Id., Rep. at
3-4.  Kapusta disputes whether this statement is sufficient to
establish the level of ordinary skill in the art, which Gale
needs in order to prove invalidity under 35 U.S.C. § 103(a).

**C. Prior Art References**

    The third major issue before the court pertains to prior
art.  The parties dispute whether two prior art references
anticipate Claims 1 and 3 of the '663 patent, thereby rendering
them obvious and invalid.  The first prior art reference is U.S.
Patent No. 4,281,283 issued to Ross et al. ("Ross").  The
parties dispute whether Ross discloses or illustrates "a test
circuit comprising . . . a first probe and a second probe,
wherein said first probe and said second probe comprise a
central conductor and surrounding shield, respectively, of a
test circuit connector which is releasably connectable to a
coaxial cable connector mounted on a first end of the coaxial
cable to be tested."  Def.'s SUF 6.  They also dispute whether
the Ross reference discloses "a device capable of generating a
signal in response to a completion of a circuit involving said
first test circuit, said test circuit and the coaxial cable to

5

be tested," as well as whether a "third probe" or "fourth probe" is disclosed.  Def.'s SUF 13.

The second prior art reference is U.S. Patent No. 4,553,085 issued to Canzano ("Canzano").[1]  Gale disputes whether Canzano discloses or illustrates "a test circuit comprising, in series, a battery, a device capable of generating a signal in response to completion of said circuit, a first probe and a second probe."  Def.'s SUF 8.  However, Gale disputes this fact only to the extent that it is determined that its accused products infringe any claim of the '663 patent.  Id.  Gale does not wish to dispute this fact to the extent that the accused products do not infringe the '663 patent.  Put directly, Gale's wishes in this regard are irrelevant: the court will examine the evidence

---

[1]Kapusta moved for summary judgment that the Canzano reference did not anticipate the '663 patent.  One of the reasons cited was that Canzano discloses a parallel circuit, whereas the '663 patent discloses a series circuit.  Gale argued that if this is true, then Gale's accused products do not infringe, because they also use a parallel circuit.  The standard for evaluating anticipation is the same as that for evaluating infringement.

Kapusta made this damaging argument because of the stipulation.  Gale already conceded that the accused products met every limitation in the '663 patent but for the "hand grip size case" limitation.

Gale, recognizing the potential double-bind for itself, attempted to provisionally dispute whether Canzano disclosed the series limitation.  It disputed this fact only to the extent that the accused products were found to infringe.  If the accused products were found to infringe, then it could argue that Canzano disclosed a series circuit, because the court would have necessarily found, in the infringement analysis, that the accused products contained a series circuit.  If the accused products were found not to infringe, however, then it was willing to concede Kapusta's point that the Canzano reference actually disclosed a parallel circuit.

1  proffered, and if it suggests a dispute of material fact, then

2  summary judgment must be denied.

3      The remaining prior art references discussed by the parties

4  are undisputed.  These include U.S. Patent No. 1,372,570 to

5  Smith ("Smith"), U.S. Patent No. 2,459,351 to Weincord

6  ("Weincord"), and U.S. Patent No. 2,413,484 to Berger

7  ("Berger"). It is undisputed that Smith, Weincord, and Berger do

8  not disclose the "test circuit comprising . . ." limitation.

9  Def.'s SUF 2, 4, 10.  Furthermore, it is undisputed that these

10 references do not disclose the "device capable of generating a

11 signal . . ." limitation.  Def.'s SUF 11-12, 14.  Nevertheless,

12 Gale notes that these limitations would have been obvious to a

13 skilled artisan.  Def.'s SUF 2, 4, 10-12, 14.

14 **D. Abandonment & Inequitable Conduct**

15     Last, Gale moves for summary judgment on the grounds of

16 abandonment and inequitable conduct.  At issue is Kapusta's

17 conduct during the pendency of his application.  The facts here

18 are mostly undisputed.  On October 13, 1983, Kapusta filed an

19 application for a patent with the Patent Office.  Def.'s SUF 3.

20 Soon thereafter, in 1983-84, Kapusta entered into an agreement

21 with a company, Lemco, that would manufacture and distribute a

22 product believed to be covered by the pending application, and

23 began to receive royalty payments pursuant to this agreement.

24 Def.'s SUF 4-5.

25     In September of 1984, Kapusta was diagnosed with kidney

26 cancer, and his right kidney was removed as a result.  Def.'s

SUF 6.  As a result of financial losses caused by the cost of his cancer treatment, Kapusta lost both his house and his business.  Def.'s SUF 7.  Thereafter, in June 1985, he moved in with family.  Id.

On November 1, 1985, the Patent Office issued a final office action in the prosecution of the application.  Def.'s SUF 8.  In late 1985, Kapusta's patent attorney, Walter Spruegel, told Kapusta that there was a possibility that the application could go abandoned if further action was not taken, although it is unclear whether he was referring to the final office action, or whether he had even received the final office action.  Def.'s SUF 9.  In response, Kapusta instructed Spruegel, who was in his late eighties at this point, to "delay taking any action 'as long as you can.'"  Id.  Kapusta has declared that when he said this, it was his intention to delay the prosecution as long as legally possible without abandoning the application.  Kapusta Decl. in Support of Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Kapusta Decl.") at ¶ 5.

Kapusta then stopped receiving phone calls from Spruegel in 1986 without explanation.  Def.'s SUF 10.  On June 10, 1986, the Patent Office issued a Notice of Abandonment that the application had become abandoned due to Kapusta's failure to respond to the office action of November 1, 1985.  Def.'S SUF 12.  In 1988, Spruegel died.  Def.'s SUF 13.  However, Kapusta did not learn of this until 1989, when he attempted to contact Spruegel regarding the status of his application.  Def.'s SUF

14.  Kapusta asserts that from 1989-90, he tried to contact Spruegel's widow to obtain his file but was unable to locate her.  Def.'s SUF 15.  Indeed, Kapusta alleges that he first learned of the abandonment when he contacted the Patent Office himself in late 1990 or early 1991, at which point the officials there recommended that he retain an attorney to assist with the revival of the application.  Def.'s SUF 18.

On October 28, 1991, Kapusta filed a petition to revive the application through his newly appointed counsel on the grounds that the application's abandonment was unavoidable.  Def.'s SUF 22.  In support of his petition, Kapusta provided an affidavit stating that the loss of communication between him and Spruegel was caused by (1) Kapusta's cancer, (2) his financial losses, and (3) possibly Spruegel's old age and the fact that he was working out of his house.  Def.'s SUF 24.  On December 17, 1991, the Patent Office dismissed Kapusta's first petition.  Def.'s SUF 25.  In doing so, it noted that Kapusta lacked "an adequate verified showing of the cause of the unavoidable delay."  Def.'s SUF 26.  Specifically, the Office required Kapusta to submit (1) a statement by all persons with knowledge of the cause of delay; (2) a showing of the responsible person's financial condition that caused the unavoidable delay in payment of the fee; and (3) a nexus between the lack of diligence in filing a timely petition to revive and the asserted financial difficulty.  Id.

After this office decision, Kapusta learned that Spruegel's widow had died, Def.'s SUF 27, and that Spruegel's son had no

knowledge of whether anyone reviewed his father's papers after his death, Def.'s SUF 28.  On March 2, 1992, Kapusta filed a renewed petition to revive the application.  Def.'s SUF 29.  In this petition, Kapusta informed the Office that Spruegel's widow had died, that Spruegel had no secretary or other attorney who would be knowledgeable about the case, and that Spruegel's son also did not have any knowledge regarding the delay.  Def.'s SUF 30.  Furthermore, Kapusta submitted that his financial condition was not the direct cause of the delay in filing a response to the office action, nor was it the reason for any lack of diligence in filing the petition to revive.  Def.'s SUF 31.  The parties dispute whether Kapusta failed to submit this financial information because he was receiving royalties from the company Lemco in connection with the sale of products believed to be covered by the application.  Def.'s SUF 34.

Kapusta ultimately asserted as grounds for delay: the loss of communication between him and Spruegel, caused by Kapusta's moves; the fact that Mr. Spruegel was working out of his home; the subsequent death of Mr. Spruegel; and the subsequent efforts undertaken by Kapusta to ascertain the status of his application.  Def.'s SUF 32.  Kapusta informed the Patent Office that financial difficulty per se was not the cause of the delay; rather, his financial condition caused him to move several times, resulting in the loss of communication with his attorney. On May 20, 1992, the Patent Office granted the renewed petition and thereby revived the application.

# III. Standards

## SUMMARY JUDGMENT STANDARDS UNDER FED. R. CIV. P. 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

11

should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir. 1998).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party,

12

<u>Anderson</u>, 477 U.S. 248-49; <u>See</u> <u>also</u> <u>Cline v. Industrial</u>
<u>Maintenance Engineering & Contracting Co.</u>, 200 F.3d 1223, 1228
(9th Cir. 1999).

In the endeavor to establish the existence of a factual
dispute, the opposing party need not establish a material issue
of fact conclusively in its favor.  It is sufficient that "the
claimed factual dispute be shown to require a jury or judge to
resolve the parties' differing versions of the truth at trial."
<u>First Nat'l Bank</u>, 391 U.S. at 290; <u>see also</u> <u>T.W. Elec. Serv.</u>,
809 F.2d at 631.  Thus, the "purpose of summary judgment is to
'pierce the pleadings and to assess the proof in order to see
whether there is a genuine need for trial.'"  <u>Matsushita</u>, 475
U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's
note on 1963 amendments); <u>see</u> <u>also</u> <u>Int'l Union of Bricklayers &</u>
<u>Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.</u>, 752
F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court
examines the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if any.
Rule 56(c); <u>See also</u> <u>In re Citric Acid Litigation</u>, 191 F.3d
1090, 1093 (9th Cir. 1999).  The evidence of the opposing party
is to be believed, <u>see Anderson</u>, 477 U.S. at 255, and all
reasonable inferences that may be drawn from the facts placed
before the court must be drawn in favor of the opposing party,
<u>see Matsushita</u>, 475 U.S. at 587 (citing <u>United States v.</u>
<u>Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam)); <u>See also</u>

13

1   <u>Headwaters Forest Defense v. County of Humboldt</u>, 211 F.3d 1121,

2   1132 (9th Cir. 2000).   Nevertheless, inferences are not drawn

3   out of the air, and it is the opposing party's obligation to

4   produce a factual predicate from which the inference may be

5   drawn.   See <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp.

6   1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

7   Cir. 1987).

8        Finally, to demonstrate a genuine issue, the opposing party

9   "must do more than simply show that there is some metaphysical

10  doubt as to the material facts. . . . Where the record taken as

11  a whole could not lead a rational trier of fact to find for the

12  nonmoving party, there is no 'genuine issue for trial.'"

13  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

14                          **IV. Analysis**

15  **A. Infringement**

16       Kapusta first moves for summary judgment on the issue of

17  infringement.   Infringement is a two-step process in which the

18  court construes the claims and the fact-finder compares the

19  claims with the accused device to determine whether there is

20  infringement.   <u>Rexnord Corp. V. Laitram Corp.</u>, 274 F.3d 1336,

21  1341 (Fed. Cir. 2001).   The question of literal infringement is

22  one of fact.   <u>Kemco Sales, Inc. V. Control Paper, Inc.</u>, 208 F.3d

23  1353, 1359-60 (Fed. Cir. 2000).

24       The main issue in dispute concerns the parties' joint

25  stipulation.   Kapusta asserts that, after this court's entry of

26  final judgment on November 2, 2004, which incorporated the

14

parties' stipulation, the only remaining issue for the Federal Circuit was the claim construction order regarding the "hand grip size case" limitation.  Paragraph 6 of the stipulation states: "The parties agree that each claim element specified in claims 1, 2, and 3 of the '663 patent, other than the 'hand grip size case' . . . are present in the Gale Pocket Toner products." Because the Federal Circuit reversed this court's claim construction with respect to the hand-grip size case limitation, Kapusta argues that there is no genuine issue of material fact that the accused products comprise all the limitations of the '663 patent.

In response, Gale first contends that the entire stipulation was dependent on this court's claim construction. Because the Federal Circuit vacated that claim construction, Gale takes the position that it may now dispute whether the accused products meet the other limitations of the '663 patent, i.e., those other than the hand-grip size case element.  Second, Gale argues that even if it is limited to disputing the "hand-grip size case" element, that element is defined by more than merely size, and that the accused products do not possess these additional properties.  Finally, Gale argues that if the court interprets the stipulation as Kapusta interpreted it, Gale should be relieved of the generally binding nature of its admissions.

### 1. Interpretation of Stipulation

The first task for the court is to construe the

15

1  stipulation.   Interpretation of a stipulation is similar to

2  contract interpretation in that both present a legal issue to be

3  decided by the court.   See Fuji Photo Film Co. v. Jazz Photo

4  Corp., 394 F.3d 1368, 1373 (Fed. Cir. 2005).

5      As Gale notes, there is language in the stipulation

6  suggesting that the admissions made were contingent on the

7  court's claim construction order.   For instance, paragraph five

8  states: "The parties stipulate that if the claims of the '665

9  patent are interpreted as specified in the claim construction

10  order dated August 5, 2004, then the Gale Pocket Toner products

11  . . . do not infringe."   Similarly, paragraph seven states that

12  "[b]ecause the parties hereby stipulate to judgment of non-

13  infringement based on the Court's claim construction ruling, the

14  remaining claims and issues in Kapusta summary judgment motion

15  and in this action are moot and can be dismissed."

16      There are several problems, however, with Gale's reliance

17  on these statements.   One problem is that both statements appear

18  to be contingent admissions on the part of Kapusta, not Gale,

19  and therefore the "if" language protects Kapusta's interests,

20  rather than Gale's.   In contrast, paragraph six, in which the

21  parties agreed that the remaining elements of the '663 patent

22  were present in the accused products, is an admission on the

23  part of Gale.   Furthermore, given that paragraphs five and seven

24  were expressly conditioned on this court's claim construction

25  order being upheld, the absence of the same language elsewhere

26  appears purposeful.   Similarly, the very last sentence of the

16

1   stipulation reads: "If . . . the Federal Circuit reverses this

2   Court's claim construction, then Gale may proceed with its

3   defenses of invalidity and unenforceability on remand."  It does

4   not, notably, say anything about proceeding with other arguments

5   of non-infringement.  Finally, a plain reading of paragraph six

6   fails to reveal any language of condition or qualification.

7        Nevertheless, it is unclear why Gale would have stipulated

8   that all the limitations of the '663 patent were present in the

9   accused products but for the hand grip size case.  Presumably,

10  if Gale had intended to make such a sweeping admission, it would

11  have received something in exchange for it.  Perhaps Kapusta's

12  admissions in paragraphs five and seven served as consideration

13  in the bargain.  Alternately, perhaps the parties felt that a

14  qualified stipulation with regard to the other limitations might

15  jeopardize the Federal Circuit's jurisdiction to hear the case,

16  given that its jurisdiction under 28 U.S.C. § 1295 is limited to

17  appeals from a final judgment and after a full adjudication on

18  the merits.  See Silicon Image, Inc. v. Genesis Microchip, Inc.,

19  395 F.3d 1358, 1362-63 (Fed. Cir. 2005) (holding that "[t]he

20  final judgment rule cannot be satisfied by stipulation of the

21  parties.")

22       In any event, it is not the court's role to read the

23  parties' minds.  The court can only decipher the parties' intent

24  based on the face of the stipulation.  As the Federal Circuit

25  noted with regard to settlement agreements, "the parties were

26  the architects of their own settlement structure.  However

1   unfortunate those choices in designing their settlement

2   agreement, these choices may not now be unilaterally undone by a

3   court." Id. at 1363.  Similarly, Gale and Kapusta submitted a

4   stipulation that, while not a model of clarity, appears to

5   stipulate that the accused products meet all the limitations of

6   the '663 patent but for the hand grip size case.  So construed,

7   Gale cannot now dispute that the accused products lack the

8   remaining limitations of the '663 patent.

9        **2. Hand-Grip Size Case**

10       Gale next argues that, even if it is limited to disputing

11  whether the accused products meet the "hand-grip size case"

12  limitation, this term is not merely defined by its size.

13  Rather, Gale argues that the case is also defined by a "test

14  circuit" mounted within the case—which Gale contends is lacking

15  in the accused products.  In addition, Gale argues that even if

16  the accused products have a "test circuit" so defined, they do

17  not have a single case that houses both test circuits, as

18  disclosed in Claim 3 of the '663 patent.  While ingenious, these

19  arguments are also precluded by the court's order adopting the

20  stipulation and entering final judgment for three reasons.

21       First, the order stated that the "parties agree that each

22  claim element specified in claims 1, 2 and 3 of the '663 patent,

23  other than the term 'hand grip size case' described in paragraph

24  5 above, are present in the Gale Pocket Toner products."  Order

25  ¶ 6.  The only disputed was the term "hand grip size case" as it

26  related to the three limitations described in paragraph five.

18

This included the limitation that the case be (1) "no smaller than the width of an adult palm, so that it can be grasped firmly in one's hand," (2) "no smaller than 1 inch in width," and (3) "of a rectangular shape."  ¶ 5.  Absent from this list of limitations is any mention of test circuits, or the number of cases disclosed by the "hand grip size case."

Second, while claim 1 of the '663 patent discloses a "hand-grip size case in which said test circuit is mounted," the order indicates that the only issue in dispute was a "hand grip size case."  It may also be inferred on this basis that the omitted text (i.e., "in which said test circuit is mounted") was not in dispute.  A contrary interpretation would render the omitted text meaningless or superfluous.

Finally, the Federal Circuit's opinion reveals a similar understanding of the order as the one the court now adopts.  First, the court construed "hand-grip size case" as "a case of a size that can be gripped in a normal hand"—nothing more and nothing else.  Gale cannot now interpose its own elements in the Federal Circuit's definition of that term.  Second, the court observed: "[w]hile we might . . . make our own judgment on the question of infringement, based on the record, the better practice is to have the district court make that factual determination on remand."  Kapusta, slip op. at 10.  In order to grant summary judgment on infringement, there must be no genuine dispute over material facts.  Accordingly, if the Federal Circuit could have entered a judgment on infringement, it must

19

1   have necessarily assumed that the remaining limitations of the

2   '663 patent—including the non-size based limitations in "hand

3   grip size case"—were agreed upon.

4        Thus, in sum, the court declines to adopt Gale's

5   interpretation of the "hand-grip size case" element as

6   encompassing more than size-based limitations.  This is based

7   upon the language of this court's claim construction order read

8   as a purposeful whole, the language of the '663 patent itself,

9   and the Federal Court's understanding of the posture of the

10  case.

11       **3. Relief from Admissions and/or Final Judgment**

12       Finally, Gale asks the court to relieve it from the binding

13  nature of its admissions in the stipulation.  The critical

14  defect with this argument is that these admissions formed the

15  basis of this court's entry of final judgment, and Rule 60(b)

16  sets the parameters on when a court may grant relief from a

17  final judgment.  Fed. R. Civ. P. 60(b).  In relevant part, Rule

18  60(b) states that a court may relieve a party from final

19  judgment not later than one year after entry of judgment when

20  the reason for doing is because of mistake, inadvertence,

21  surprise, or excusable neglect.  Even assuming, arguendo, that

22  Gale had grounds for seeking relief from final judgment, the

23  time in which such relief could have been granted has now

24  expired.  Accordingly, the stipulation remains binding on both

25  parties.

26       **4. Literal Infringement**

20

1    With the order and stipulation of final judgment properly

2  construed, the court turns to the last issue of infringement.

3  As noted earlier, infringement is a two-step process.  Rexnord

4  Corp., 274 F.3d at 1341.  Given that the Federal Circuit's

5  holding in this case completes the step of claim construction,

6  the only remaining issue is whether there is a genuine issue of

7  material fact that the accused products do not infringe the '663

8  patent.

9    Kapusta has submitted sufficient evidence that there is no

10  genuine issue here.  Paragraph six in the order conclusively

11  establishes that each element of the '663 patent is present in

12  the accused products.  The only question now is whether the

13  accused products employ "a case of a size that can be gripped in

14  a normal hand."  Kapusta, slip op. at 10.  There is little doubt

15  that they do.  Even examination of a photograph of the accused

16  products plainly reveals that the products can be gripped in a

17  normal hand.  Simonis Decl. in Support of Pl.'s Opp'n to Def.'s

18  Mot. for Summ. J. ("Simonis Decl."), Exh. E (photograph of

19  accused devices next to rulers).  Moreover, Kapusta's expert

20  observed that the accused products "fit[] comfortably into the

21  grip of the human hand."  Expert Rep. of Michael DeAngeli, at 8

22  and 12, Exh. D of Simonis Decl.  This comports with Gale's own

23  description of the PT-1, PT-2, and PT-6 models as "ergonomic" on

24  its website.  Id.  As Gale has failed to produce any evidence

25  suggesting that any of the accused products could not be gripped

26  in a normal hand, summary judgment with respect to infringement

1  must be granted.

2  **B. Expert Reports**

3  Kapusta next moves for summary judgment on the grounds that

4  defendant cannot establish the invalidity of the '663 patent for

5  obviousness.

6  A patent may not be obtained . . . if the differences
   between the subject matter sought to be patented and

7  the prior art are such that the subject matter as a
   whole would have been obvious at the time the invention

8  was made to a person having ordinary skill in the art
   to which said subject matter pertains.

9
   34 U.S.C. 103(a).  Specifically, plaintiff argues that defendant

10 will be unable to provide an expert who can testify as to the

11 level of ordinary skill in the art, an element of the

12 obviousness analysis.  As described earlier, defendant's

13 technical expert, Mr. Robert Gale, has not submitted an expert

14 report in accordance with the scheduling order and Kapusta

15 therefore contends that he cannot testify regarding this issue.

16 Defendant responds in three ways.  First, defendant argues

17 that it has already provided plaintiff with the expert report of

18 another technical expert, Mark Scheitrum, who will be able to

19 testify as to the level of ordinary skill in the art.  Second,

20 defendant argues that Mr. Gale was not required to submit an

21 expert report under Rule 26(a)(2)(B) of the Federal Rules of

22 Civil Procedure.  Third, defendant argues that expert testimony

23 is not required in order to establish obviousness.

24 With respect to the first argument, the court agrees that

25 Gale's other expert, Mark Scheitrum, may testify as to the level

26
                                22

1    of ordinary skill in the art.  Mr. Scheitrum's report was mailed
2    to plaintiff on April 23, 2004, more than two years in advance
3    of the court's deadline regarding the provision of expert
4    reports.  Furthermore, the report detailed Mr. Scheitrum's
5    opinion with respect to the disputed element of nonobviousness.
6        Kapusta argues that Mr. Scheitrum's report only speaks in
7    generalities about the ordinary level of skill in electronics
8    testing devices.  As support, he cites <u>Ruiz v. A.B. Chance</u>, in
9    which the Federal Circuit held that the expert testimony at
10   issue was not specific enough to prove the ordinary level of
11   ordinary skill by clear and convincing evidence.  234 F.3d 654,
12   667 (Fed. Cir. 2000).  However, the report submitted by Mr.
13   Scheitrum is not his testimony.  Rather, as indicated by the
14   plain language of Rule 26, the report need only disclose the
15   "basis and reasons" for the opinions to be expressed.  Mr.
16   Scheitrum has done so here.  Accordingly, there is a genuine
17   dispute about the level of ordinary skill in the art.[2]
18       Given that defendant will be able to offer the testimony of
19   Mr. Scheitrum, it is unnecessary to rule on defendant's third
20   argument, that is, whether expert testimony is needed at all to
21   prove the level of ordinary skill in the art.[3]

22
23       [2]Because the court has determined Scheitrum's report satisfies
     the evidentiary requisite, the court need not go further.

24       [3]The court notes that it is doubtful that the present case
25   would fall into any of the categories that plaintiff identifies as
     situations in which expert testimony is unnecessary.  These include
26   situations where the art is relatively simple and capable of being
     understood by a lay person—which seems unlikely given that the

23

**C. Prior Art References**

    Kapusta also moves for summary judgment with respect to the issue of invalidity under 35 U.S.C. § 102(b), which provides, inter alia, that one may not patent an invention that was previously patented.  "[A] claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference."  <u>Celeritas Techs. Ltd. V. Rockwell Int'l Corp.</u>, 150 F.3d 1354, 1360 (Fed. Cir. 1998). Specifically, Kapusta argues that the '663 patent is not anticipated by any of the prior art references identified by Gale.  Gale does not dispute that three of the prior art references—Smith, Weincord, and Berger—lack certain limitations (i.e., the "test circuit comprising . . ." limitation and the "device capable of generating a signal . . ." limitation).  As there is no genuine issue of material fact that these references fail to anticipate the '663 patent, summary judgment with respect to these references is proper.  The remaining dispute centers on the Ross and Canzano references, and Claims 1 and 3 of the '663 patent.

**1. Ross Reference**

    In its attempt to cover multiple prior art references in its initial brief, Kapusta spends a meager six sentences explaining to the court why Ross does not anticipate Claim 1.

---

prior art consists of patents related to coaxial cable equipment—and situations where the level of skill is reflected in the prior art itself.

1  In essence, he points to his own patent, points to the Ross

2  patent, and calls it a day, apparently expecting the court to

3  divine from this why it should grant summary judgment.  For

4  example, Kapusta does not explain whether Ross does not

5  anticipate the '663 patent because it fails to disclose a "first

6  probe" and "second probe"—which it seemingly does, given that

7  each jack in Ross has a probe connecting to the central

8  conductor cable and a probe connecting to the cable shield—or

9  whether it fails to anticipate because the jack is directed

10  toward audio cables, rather than coaxial cables.

11     Kapusta attempts to retreat from this scattershot approach

12  in his reply brief by narrowing the issue to whether the probes

13  comprise a central conductor and surrounding shield.  Not only

14  is this too late, as it denies Gale a fair opportunity to

15  respond, but there is a genuine dispute on the merits.  At least

16  at first blush, conductor wire 21 seems to disclose a "central

17  conductor," and ground wire 22 seems to disclose a "surrounding

18  shield."  Ross Reference, Fig. 2 and Col. 3, lines 31-32.

19  Accordingly, Kapusta has failed to meet his initial burden of

20  proving that there is no genuine issue of material fact here.

21  And, because there is a genuine issue of material fact as to

22  whether Ross anticipates Claim 1, there is also the same dispute

23  as to whether Ross anticipates Claim 2.  See SIBIA

24  Neurosciences, Inc. V. Cadus Pharm. Corp., 225 F.3d 1349, 1359

25  (Fed. Cir. 2000).

26     Kapusta's argument with respect Claim 3 of the '663 patent

is derivative of his arguments with respect to Claim 1.  He

argues that because Ross fails to disclose a "first probe" and

"second probe" as described above, Ross also fails to disclose

"third probe" and "fourth probe" of a second test circuit that

form a coaxial cable connector.  However, Ross discloses two

jacks—each of which contain two probes—equaling a total of four

probes.  Id. at ¶ 7-8.  Again, there is at least a genuine

dispute with regard to whether Ross discloses the limitations in

Claim 3.  Thus, summary judgment as to this issue would also be

inappropriate.

**2. Canzano Reference**

Next, Kapusta asserts that the Canzano reference does not

anticipate the '663 patent because it "fails to disclose a test

circuit comprising, in series, a battery, a device capable of

generating a signal in response to completion of said circuit, a

first probe and a second probe."  Pl.'s Mot. for Summ. J. at 7,

11.  The crux of the dispute is that Canzano discloses a

parallel circuit, whereas the '663 patent discloses a series

circuit.  Kapusta argues that this difference makes it

impossible for Canzano to anticipate any of the '663 claims.

Kapusta has met its initial burden of proving that there is no

genuine issue of material fact that Canzano does not anticipate.

Canzano discloses that "[a] short indicator circuit including

light and switch is connected across the battery terminals in

parallel with the center conductors and ground conductors"

(emphasis added).  In contrast, all of the circuits in the '663

26

1  patent appear to employ a series configuration.

2      The burden then shifts to Gale to establish that a genuine
3  issue of material fact actually exists.  Gale couches its
4  disagreement as contingent on the court's ruling with respect to
5  infringement because if the court had adopted its interpretation
6  of the stipulation, it would have caught Kapusta in a catch-22.
7  If Canzano did not anticipate because it employed a parallel
8  circuit, then Gale could not infringe because it too employs a
9  parallel circuit, or so the argument would go.  However, as
10  discussed above, Gale cannot dispute that it uses a series
11  circuit, given that it stipulated to the contrary.

12      Because the circuit with the signaling device in Canzano
13  uses a parallel circuit, anticipation is impossible.  At some
14  point, each of the three claims in the '663 patent disclose a
15  series circuit that includes "a device capable of generating a
16  signal in response to completion of [the] circuit."  This
17  appears in the main text of Claim 1, is incorporated by
18  reference in Claim 2, and is disclosed in subpart b of Claim 3.
19  Because a prior art reference must disclose "each and every
20  limitation" in order to anticipate a claim, Canzano cannot do
21  so.  As there is no genuine issue of material fact that Canzano
22  does not anticipate the '663 patent, summary judgment should be
23  granted.

24      **D. Abandonment & Inequitable Conduct**

25      Last, Gale moves for summary judgment with respect to its
26  affirmative defenses of patent invalidity due to abandonment and

27

1   unenforceability based upon inequitable conduct.  First, Gale

2   argues that the Patent Office's decision to revive Kapusta's

3   application was arbitrary and capricious.  The Patent Office

4   made this decision after determining that Kapusta's delay in

5   responding to an office action, which caused the application to

6   be deemed abandoned, was "unavoidable."  Second, Gale argues

7   that Kapusta engaged in inequitable conduct related to the non-

8   disclosure of financial information to the Patent Office.  The

9   court considers each argument in turn.

10      **1. Abandonment**

11      This court must review decisions of the Patent Office under

12  the deferential arbitrary and capricious standard of the

13  Administrative Procedure Act.  <u>Ray v. Lehman</u>, 55 F.3d 606, 608

14  (Fed. Cir. 1995), <u>cert. denied</u>, 516 U.S. 916 (1995).  Agency

15  action may only be set aside if it is "arbitrary, capricious, an

16  abuse of discretion, or not otherwise in accordance with the

17  law."  5 U.S.C. § 706(2)(A).  <u>See also</u> <u>Morganroth v. Quigg</u>, 885

18  F.2d 843, 848 (Fed. Cir. 1989) (holding that the Patent Office's

19  interpretation of statutory and regulatory provisions regarding

20  abandonment and revival of patent applications is entitled to

21  "considerable deference").

22      Accordingly, this court may "not [] substitute its own

23  judgment for that of the agency."  <u>Ray</u>, 55 F.3d at 608.  Indeed,

24  this court should only set aside decisions of the Patent Office

25  if they "lack any basis in reason or common sense." <u>Smith v.</u>

26  <u>Mossinghoff</u>, 671 F.2d 533, 538 (D.C. Cir. 1982).  At the same

28

1   time, however, a court "should not supply a reasoned basis for

2   the agency's action that the agency itself has not given."

3   Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mutual Auto.

4   Ins. Co., 463 U.S. 29, 43 (1983) (internal quotations omitted).

5       Here, Gale points out that the Patent Office's decision

6   consisted of a single sentence, "The Petition is granted."

7   Patent Office Decision Granting Renewed Petition, Exh. B8 to

8   Finnerty Decl.  Thus, Gale argues that because the agency has

9   not set forth a reasoned basis for its decision, this court must

10  set that decision aside.

11      Gale is correct with regard to the law, but incorrect with

12  regard to the facts.  First, a single sentence decision issued

13  by an agency would typically constitute arbitrary and capricious

14  action in violation of the APA.  See Commc'ns. and Control, Inc.

15  v. F.C.C., 374 F.3d 1329, 1335-36 (D.C. Cir. 2004) (finding that

16  agency's departure from usual practice of correcting

17  typographical errors for license applicants "with no

18  explanation" was the epitome of arbitrary and capricious

19  decision-making) (emphasis in original); Am. Tel. & Tel. Co. v.

20  F.C.C., 974 F.2d 1351, 1355 (D.C. Cir. 1992) (finding that

21  "conclusory assertions" by agency were arbitrary and

22  capricious); Columbia Gas Transmission Corp. v. F.E.R.C., 448

23  F.3d 382, 387 (D.C. Cir. 2006) ("A tight-lipped punt will not

24  do.").  While it may not be that every single agency action (or

25  choice of inaction) must be accompanied by written explanation,

26  here, the Patent Office was required to make a determination as

                                29

1   to whether Kapusta's delay was "unavoidable."  This

2   determination is the type of agency adjudication that warrants

3   explanation.

4       Nevertheless, Gale's argument that the Patent Office's

5   decision only consisted of one sentence, "The petition is

6   granted," is taken out of context.  Kapusta submitted two

7   petitions: an initial petition on October 28, 1991 and a renewed

8   petition on March 5, 1992.  The Patent Office's decision to

9   reject the initial petition was accompanied by a two-page

10  decision.  That decision set forth the criteria for when a

11  petition to revive should be granted, and explained those that

12  were satisfied in Kapusta's petition and those that were not:

13          A  grantable  petition  to  revive  an  abandoned
            application under 32 USC 122 and 37 CFR 1.137(a) must
14          be accompanied (1) by an adequate verified showing of
            the cause of unavoidable delay, (2) by the proposed
15          response to the outstanding office action, (3) by the
            petition fee required by law, and (4) by a terminal
16          disclaimer and fee . . . This petition lacks items (1)
            and (2) above.
17
    Patent Office Decision Denying Petition, Exh. B5 to Finnerty
18
    Decl.  The office then explained why the items were lacking,
19
    e.g., because of the absence of a verified statement from the
20
    widow of Kapusta's attorney Spruegel, and the absence of
21
    verified financial information.  Id.
22
        The subsequent decision granting Kapusta's renewed petition
23
    should be viewed in light of the office's previous decision,
24
    which instructed Kapusta on how to cure the defects in his
25
    initial petition.  While the Patent Office did not specifically
26
                              30

state in its subsequent decision that Kapusta in fact remedied the pre-existing problems, it may be fairly inferred that Kapusta did so, given that he adopted the steps recommended in the office's prior decision. This is particularly the case in light of the back-and-forth nature of the proceedings. "[A] court can uphold an agency decision 'of less than ideal clarity if the agency's path may reasonably be discerned.'" Northwest Motorcycle Ass'n v. U.S. Dep't of Agriculture, 18 F.3d 1468, 1478 (9th Cir. 1994), quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

An applicant may revive an abandoned application by demonstrating that the delay in responding to the office action was either "unavoidable" or "unintentional." 35 U.S.C. § 133; 37 C.F.R. § 1.137. As noted earlier, the Patent Office issued a Notice of Abandonment after Kapusta failed to respond to its final office action, and Kapusta thereafter chose to revive his application under the "unavoidable" standard. The Patent Office evaluates these petitions for revival according to a reasonably prudent person standard. Ray, 55 F.3d at 609. Whether an application's delay in prosecuting the patent application is unavoidable "must be decided on a case-by-case basis, taking all of the facts and circumstances into account." Smith, 671 F.2d at 538.

In the vast majority of cases discussing what constitutes "unavoidable" delay, courts have deferred to the decisions of the Patent Office. See, e.g., Rydeen v. Quigg, 748 F. Supp.

31

1   900, 905 (D.D.C. 1990) (holding that the Patent Office's

2   interpretation of "unavoidable" was not arbitrary or capricious,

3   despite somewhat conflicting legislative history); Haines v.

4   Quigg, 673 F. Supp. 314, 318 (N.D. Ind. 1987) (holding that the

5   Patent Office's decision as to what constituted unavoidable

6   delay was not arbitrary or capricious); Kim, 718 F. Supp. at

7   1281-84 (holding that the Patent Office's decision not to revive

8   application was not arbitrary or capricious).  Of course, in

9   most of these cases, the parties seeking review are patent

10  applicants who have been denied revival, rather than here, where

11  Kapusta was granted revival.  Nevertheless, they are instructive

12  of the substantial deference afforded to the Patent Office.

13              **a. Delay in Responding to Office Action**

14       While there might be situations in which it would be

15  appropriate for a court to find the Patent Office's decision to

16  revive an application as arbitrary and capricious, cases in

17  which patent applicants have had to deal with cancer and the

18  death of their attorney are not among them.  First, Kapusta has

19  pointed to a number of reasons why his initial delay in

20  responding to the Office Action should be deemed unavoidable.

21  For instance, his initial delay in responding to the Office

22  Action of November 1, 1985 is explicable by his statement to his

23  attorney to delay taking action for as long as possible, and the

24  subsequent loss of communication between the two.  While the

25  record does not definitively reveal a reason for Spruegel's

26  inaction, it would not be arbitrary for the Patent Office to

conclude that Spruegel's inaction was excusable in light of Kapusta's previous instruction, and the inability to contact Kapusta for any further clarification.

Even so, Gale chides Kapusta for failing to keep Spruegel apprised of his new addresses. However, in light of the circumstances, it would not be arbitrary for the Patent Office to conclude that his failure to do so was unavoidable. Even though, as Gale points out, a patent applicant is responsible for the acts or omissions of his attorney, where the attorney's actions derive from the conduct of the applicant, and the applicant's behavior is deemed unavoidable, the attorney's actions are similarly unavoidable. Additionally, it would not be arbitrary for the Patent Office to conclude that the death of Spruegel (and, presumably, his capacity in the time period preceding his death) made Kapusta's delay in responding to the Office Action unavoidable.

### b. Delay in Reviving Application

Second, the Patent Office's conclusion that Kapusta's delay in reviving his application was unavoidable is also not arbitrary. In his renewed petition, Kapusta explained that this second delay was due to the fact that it took an extended period of time for Kapusta to learn that the application had become abandoned, to find out that his attorney had died, and to contact the Patent Office himself after several unsuccessful months of attempting to informally revive the application. In light of all these factors, this court cannot say that the

1   Patent Office's decision to grant the renewed petition "lack[ed]

2   any basis in reason or common sense." <u>Smith</u>, 671 F.2d at 538.

3        Gale maintains that Kapusta's failure to initiate

4   communication with his attorney after Kapusta stopped receiving

5   phone calls from him demonstrates that he was not diligent in

6   prosecuting his patent.  However, Gale ignores the fact that the

7   Patent Office could have taken into account the underlying

8   reasons for why Kapusta did not do so, to wit, his constant

9   moving prompted by the financial burden of medical treatment for

10  cancer.  Moreover, it would not be arbitrary for the Patent

11  Office to take into account the time and effort that it took for

12  Kapusta seek out and retain new counsel in order to file a

13  petition to revive the application.

14       Gale presses that the standard for demonstrating that delay

15  is unavoidable is high.  It cites, for example, the Patent

16  Office's own manual, which states that "'unavoidable' delay is

17  the epitome of 'unintentional' delay."  Manual of Patent

18  Examining Procedure ("MPEP") 711.03(c)(II)(C)(2).  Gale also

19  notes that a finding of unavoidable delay requires the patent

20  applicant to have exercised the care and diligence "generally

21  used and observed by prudent and careful men in relation to

22  their most important business." <u>Futures Tech., Ltd. v. Quigg</u>,

23  684 F.Supp. 430, 431 (E.D. Va. 1988).  However, the demanding

24  nature of this standard also suggests that on those seemingly

25  rare occasions when the Patent Office deems it appropriate to

26  excuse an applicant's delay as unavoidable, a court should be

1  reluctant to second-guess that decision.  Even if this court

2  were to disagree as to whether Kapusta's delay was truly

3  unavoidable, that is not the issue before the court.  Rather,

4  the issue is whether the Patent Office's actions were arbitrary,

5  capricious, or an abuse of discretion, which is not the case

6  here.

7  **2. Inequitable Conduct**

8  Finally, Gale argues that the '663 patent is unenforceable

9  because of Kapusta's allegedly inequitable conduct.  Gale

10  alleges that Kapusta's inequitable conduct stems from both (1)

11  the fact that he had been receiving royalty payments during the

12  pendency of his application without revealing the same to the

13  Patent Office and (2) that he allegedly submitted false

14  affidavits asserting his delay was unavoidable.  According to

15  Gale, Kapusta intentionally—rather than unavoidably—delayed

16  seeking revival of his application until the entry of a

17  competing product in the market and the resulting loss of

18  royalty payments.

19  Patent applicants must prosecute patent applications with

20  candor, good faith, and honesty.  Bristol-Myers Squibb Co. v.

21  Rhode-Poulenc Rorer, Inc., 326 F.3d 1226, 1233 (Fed. Cir. 2003).

22  A finding of inequitable conduct may be demonstrated by showing

23  that the patent applicant (1) failed to disclose material

24  information—thereby breaching this duty—and (2) had an intent

25  to deceive the Patent Office.  Bristol-Myers Squibb Co., 326

26  F.3d at 1233.  A court may balance these elements against one

1    another such that a strong showing of materiality permits a

2    somewhat weaker showing of intent.  Id. at 1234.

3         Information is material if there is a substantial

4    likelihood that a reasonable examiner would consider it

5    important in deciding whether to allow an application to issue

6    as a patent.[4]  Dayco Prods., Inc., v. Total Containment, Inc.,

7    329 F.3d 1358, 1363 (Fed. Cir. 2003) (internal quotations

8    omitted).  Information may be material even if its disclosure

9    would not have rendered the invention unpatentable.  Digital

10   Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1318 (Fed.

11   Cir. 2006).  In other words, there is no requirement of "but

12   for" causation.

13        Evidence of intent to deceive is usually inferred from the

14   patentee's overall conduct, and direct evidence of intent is not

15   required.  Ulead Sys., 351 F.3d at 1146.  Nevertheless, intent

16   to deceive may not be inferred simply based upon information

17   that was in existence at the time of patent prosecution but not

18   disclosed to the examiner.  C.R. Bard, Inc. v. M3 Sys., Inc.,

19   157 F.3d 1340, 1365 (Fed. Cir. 1998).

20        The party claiming inequitable conduct must meet the heavy

21   burden of proving the materiality and intent elements with clear

22   and convincing evidence.  Bristol-Myers Squibb Co., 326 F.3d at

23   _____

24        [4] The standard for materiality changed slightly in 1992, but
     the relevant standard for purposes here is the one noted.  See
25   Ulead Sys. Inc. v. Lex Computer & Mgmt. Corp., 351 F.3d 1139, 1145
     (Fed. Cir. 2003) (applying the standard of inequitable conduct in
26   place when the alleged conduct occurred).

1   1233.  Moreover, these elements are questions of fact often

2   inappropriate for resolution at summary judgment.  <u>See</u> <u>Ulead</u>

3   <u>Sys.</u>, 351 F.3d at 1146 (reversing finding of inequitable conduct

4   on summary judgment where sworn statements indicated absence of

5   intent); <u>Baker Oil Tools, Inc. v. Geo Vann, Inc.</u>, 828 F.2d 1558,

6   1583 (Fed. Cir. 1987) ("If the facts of materiality or intent

7   are reasonably disputed, the issue is not amenable to summary

8   disposition."); <u>Scripps Clinic & Research Foundation v.</u>

9   <u>Genentech, Inc.</u>, 927 F.2d 1565, 1583 (Fed. Cir. 1991) (denying

10  summary judgment as to inequitable conduct).

11      Here, there is a genuine dispute regarding whether

12  Kapusta's non-disclosure of his financial information was

13  material to the ultimate issuance of the patent.  While it is

14  true that the Patent Office initially requested this

15  information, it is equally true that the Office subsequently

16  decided to grant his renewed petition without it.  It appears

17  that the only reason that the Patent Office requested Kapusta's

18  financial information was because he suggested that his finances

19  were to blame for the unavoidable delay; once Kapusta clarified

20  that his financial woes were only indirectly responsible, the

21  financial information fell out of issue.  While Gale need not

22  prove that but for Kapusta's non-disclosure, the patent would

23  not have issued, the Office's decision to grant the renewed

24  petition—blind to Kapusta's financials—is probative of the

25  importance of the undisclosed information in the materiality

26  analysis.

Of course, this does not foreclose the possibility that a reasonable examiner would have found the financial information "important" for a wholly unrelated reason.  Dayco Prods., 329 F.3d at 1363.  Admittedly, in the usual case, a patent applicant's renewed interest in the abandoned application upon the threatened end of royalty payments would be of significant interest to an examiner.  MPEP § 711.03(c)(II)(D), 700-193 ("[D]elaying the revival of an abandoned application, by a deliberately chosen course of action, until the industry or a competitor shows an interest in the invention is the antithesis of an 'unavoidable' or 'unintentional' delay.").  However, given the facts in this situation, the financial information might not be important, because it would not necessarily undercut Kapusta's other proffered excuses for delay, such as his cancer and the death of his attorney.  Although a close issue, there is a genuine dispute regarding whether Kapusta's financial information was material, making summary judgment inappropriate.

In addition, the issue of whether Kapusta had the requisite intent to deceive the Patent Office also remains a genuine issue of material fact.  The intent to mislead does not require direct evidence and may be inferred from the facts and surrounding circumstances.  Bristol-Myers, 326 F.3d at 1239.  As support, Gale points to the fact that Kapusta only sought to revive his application after learning of a competing and potentially infringing product in the market.  To be sure, the fact that Kapusta wrote the phone number for the Patent Office on the same

1    envelope that carried the message in which Lemco (Kapusta's

2    manufacturer/distributor) informed him of a competing product

3    lends support to an inference that his subsequent actions were

4    motivated by the entry of a market competitor.  However, on

5    summary judgment, the court draws all reasonable inferences in

6    favor of the nonmoving party.

7         Furthermore, it could also be true, as the Patent Office

8    apparently believed, that the reasons for Kapusta's delay were

9    his medical condition and the ensuing problems that flowed from

10   that.  <u>See</u> Petition for Revival & Renewed Petition, Exhs. B & D

11   of Simonis Decl.  Accordingly, Kapusta's non-disclosure of

12   financial information could have simply been based upon grounds

13   that it was irrelevant—an explanation that is "not on its face

14   implausible."  <u>Dayco Prods.</u>, 329 F.3d at 1367 ("[I]nequitable

15   conduct requires not intent to withhold, but rather intent to

16   deceive.  Intent to deceive cannot be inferred simply from the

17   decision to withhold the [information] where the reasons given

18   for the withholding are plausible.").

19        In sum, Gale has not met its burden of proving by clear and

20   convincing evidence that the undisclosed financial information

21   was material, given the other proffered and accepted reasons for

22   delay, or that Kapusta had the requisite intent to deceive the

23   Patent Office, in light of the other reasons for non-disclosure

24   of the information.

25                          **CONCLUSION**

26        Plaintiff's motion for summary judgment of infringement is

GRANTED.

Plaintiff's motion for summary judgment of no invalidity under 35 U.S.C. § 103(a) is DENIED.

Plaintiff's motion for summary judgment of no invalidity under 35 U.S.C. § 102(b) in GRANTED in part and DENIED in part.

Defendant's motion for summary judgment of patent invalidity and unenforceability is DENIED.

IT IS SO ORDERED.

DATED:  October 13, 2006.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

40